Next case on this morning's docket is In the Interest of I.M. v. a Minor v. Robert D. And we have Brian Kibler for the appellant. And we have Ms. Kendra Peterson for the applee. And you may begin when you are prepared to do so, Mr. Kibler. Thank you. May it please the Court of Counsel, My name is Brian Kibler and I am the attorney appointed by Eppingham County to represent the appellant, Robert D. in this appeal pending before this honorable court today. In this case, the Eppingham County Circuit Court erred when it applied to the appellant's motion seeking relief from a default order in order to terminate the criminal rights. The Circuit Court erred when it applied the standards of 5-2-1401 rather than the less stringent standards of 5-2-1301. The Court, when it reviewed the appellant's motion for relief from judgment, should have applied 1301 for two basic reasons. Let me just kind of put a fine point on it and make sure I understand where you're at here. As I understand the facts, the trial court terminated parental rights as a discovery sanction. Yes, Your Honor. And you are not raising as an issue that the trial court erred by terminating a person's parental rights as a discovery sanction. I did not put that in my brief, Your Honor. However, I guess it's one of the facts to consider what rather substantial justice was done when you applied the standard of 1301. Okay, so your argument would be that that issue is subsumed in the appropriate standard that should have been used. Yes, Your Honor. Whenever you're going to go out and terminate a parent's parental rights and you do so when the parent is not there, there needs to be an overwhelming reason why the court would ever do that. And in this case, you're right, it was a discovery sanction essentially for not adhering to depositions which were noticed by the interveners who are seeking to adopt the child. It does get incorporated into my 1301 argument and also into a 1401 argument as well. Did my client use due diligence? That's an issue. But when it comes to 1301, that is a factor to consider. Whenever 1301 is analyzed, it's about whether justice was done. And if the court is going to do that, terminate rights of the discovery sanction, it calls into question whether justice was served and whether the court should have allowed the appellant to come back in and reopen the default order in motion to terminate the parental rights. Now, the Effingham County Circuit Court should have applied 1301 for two basic reasons. First, the Circuit Court's order of May 29, 2009, was not a final order resolving all litigation rights and responsibilities of the party. And the second reason the Circuit Court should have used 1301 was that the appellant's motion was made within 30 days of May 29. Now, on the first issue, for the first reason the court should have used 1301, namely it was not a final order that was entered on May 29, 2009, I would concede that it's probably a unique argument that I'm making. Traditionally, I think how attorneys who do practice juvenile cases look at it, it's always been the assumption that when a court defaults a parent and then terminates the parental rights, that's automatically a final order, whereby the parent has 30 days to come in and try to vacate that default order, or file a motion to reconsider, to overturn the order terminating parental rights. And that's the assumption I think most attorneys use. However, an appellant is arguing that the recent Illinois Supreme Court case, Department of Health Care and Family Services v. Warner, kind of takes that kind of assumption and kind of twists it around a little bit. If the court recalls in Warner, Warner was the case where the respondent father was under a child support order and a parentage action. Later on, after the child support order is entered, the state comes, files a parentage action, and they terminate his parental rights. Well, the respondent father then goes and says, hey, I'm done. All my rights and responsibilities are taken care of in this case. The state's terminated my parental rights, and they're trying to place the minor child with the foster parents. So he says, hey, I'm out of the case. However, the Supreme Court, in a 4-3 decision, said no. Just because your parental rights are terminated in a juvenile case does not mean that you still can get out from underneath a child support order. So essentially, if you take that recent case and draw it to its logical conclusion or extend it to this case, Warner could mean that just because you terminate a father's parental rights and default him does not mean that that's the actual final order that resolves all litigation. And if you apply Warner and use the principles from Warner, the appellant would assert that the court should have used 1301 whenever the respondent father comes back and tries to seek relief from the default order of May 29, 2009. I think the record shows that after that May 29, 2009 default order and order terminating parental rights, the court then set up for a further permanency review. And the goal of the agency, or the department, was to have the child adopted by the foster parents. So in other words, until that adoption order was entered, it's possible that they could have come back and sought child support from the respondent father. And therefore, if the state can still come potentially back to seek child support from the appellant, how is it then that that's a final order of May 29? The appellant is not out of the case. The appellant is not completely done with the litigation involving the minor child. So just because a default order is entered and just because an order terminating parental rights is also entered, it does not mean it's a final order. It's not a final order until the adoption actually takes place and the juvenile case closes. If it's not a final order, how is it appealable? That was raised in the actual brief. It would maybe potentially mean that this is a moot issue and should have been brought as an interlocutory appeal. That is obviously a question that appellants have pondered. And to be honest, Your Honor, I don't know. I honestly do not know. But even if this court does not agree that Warner should be extended to the case at bar, the court still should have applied 1301 pretty much under a relation back principle. The order is entered May 29, 2009. On June 25, 2009, the respondent father filed a motion pro se with the circuit clerk on June 25, 2009. The appellant filed a motion to court-appoint an appellate attorney. He does that on June 25, 2009. The circuit clerk then sends it to his then-court-appointed counsel in the juvenile case. However, on June 25, that counsel, court-appointed counsel, at the time was on vacation. He didn't get back into the office until July 1. And the record shows that on July 1, when the then-court-appointed attorney comes back, he sees this motion and he immediately files a motion for relief from judgment. That is done on July 1. So if you relate, you know, it's the position of the appellant that once the appellant goes in there and files his motion seeking an appellate attorney, he is clearly indicating that he wishes some sort of relief from that actual judgment of May the 29th. He originally was represented by private counsel? Well, what happened at the start, he gets court-appointed a counsel. It would have been Attorney Rundy. Attorney Rundy's appointment was then vacated when the appellant hired a private counsel out of Chicago, Mr. Jorgensen. Well, you know, this is a three-and-a-half-year case from when it was first filed until the... Who represented him on the day of the default? Attorney Rundy. Mr. Jorgensen then withdraws his counsel for the appellant, and then the court reappoints Mr. Rundy to represent the appellant. So Mr. Rundy had been in and out of this case for approximately three years? Three-and-a-half years, yes, Your Honor. Okay. So when the appellant files his motion on June the 25th, he's showing his intent that, hey, I want some sort of relief from this judgment. However, his attorney is not present that day, and the record shows he was on vacation. The first day Mr. Rundy comes back, he files... He takes the appellant's kind of request and puts it in a more legal form. And so if you relate back... If you take that July 1st motion and relate it back to the appellant's initial request for some sort of relief, it is clear that the June 25th should be the date that the court should have considered as being the appellant's request for relief from the judgment. And if you do that June 25th date, it is clearly within 30 days of May the 29th, 2009. Therefore, the motion was made within 30 days, and the court should have applied 1301 scrutiny rather than the more stringent 1401 scrutiny. Also, public policy should kind of come into play here. You have the state attempting to take away a child, extinguish the parental rights of the appellant. And once... And they're also trying to place the child with the foster parents. And the client's rights get extinguished, essentially, as you mentioned earlier, as some sort of discovery sanction for failing to show up to depositions. And so if that's how it plays out, then there needs to be some sort of public policy to protect the actual parent whenever... You know, the court needs to err on the side of the parent here. He's clearly showing his intent on June the 25th to object. He wants some sort of relief from the May 29th judgment, and I think it should be... Some sort of policy or some sort of deference should be given to the appellant in this case because the state is attempting to extinguish his rights and place the minor child with the foster parents. And for those two major... For those two reasons, the court should have applied 1301 rather than 1401 scrutiny. Now, had they applied 1301, substantial justice would have kind of dictated that... Substantial justice would have dictated that the court should have allowed the appellant to seek to vacate the order of May the 29th and then be allowed to have... To be present at another hearing where the court would then... Analyze whether his parental rights should be terminated. I mean, again, this is a case involving parental rights. And so, you know, you have a father in this case who's been involved for 3½ years. He's actually gone to the expense at one point in time of hiring a private counsel. He lives up in Cook County. He comes down to Effingham County for a 3½-year period. He does, you know, supervised visits with the child. He's clearly attempting to be a part of this process. How do we ignore that he made no attempt to present a meritorious defense? Not simply by not filing an affidavit, which wouldn't be required under 1301, but not even in the allegations of the motion. And he's represented by a lawyer who has defended him for on and off 3½ years, and he says absolutely nothing as to why there should be another hearing. Your Honor, I simply do not know. But that's what we have. I mean, we totally discount the meritorious defense aspect of it. Yes, Your Honor, I do understand that. As I stated in the brief, I think one of the issues when it comes to meritorious defense is in this type of case, the burden is so extreme and high on the state that that in and of itself maybe should be considered a meritorious defense. The state has such a high burden of proof. Therefore, just being involved in the litigation might be meritorious defense in and of itself. I thought it was pretty ingenious of you. I thought that was it. I just thought you couldn't argue anything else, but you did argue that several times, and I couldn't have thought of anything else myself than that. I do appreciate that, Your Honor. It's one of those things where you've got to do the best you can with what you have. And I think in and of itself, look, I mean, this is not a case, this is not Small Plains case where the state has, you know, where the state, I'll strike that line of thought there, but this is a case terminating criminal rights. This isn't some Small Plains case where the plaintiff gets a judgment against a defendant, and then 40 days later, the defendant wants to come back in and turn over the judgment. This is a very important case. It's a very sensitive case. It's a case involving criminal rights. And so when you consider just what kind of case it is, substantial justice would dictate that under 1301, the appellant's motion for relief from the May 29th order should have been granted, and the case should have been reset for further hearing on the issue of whether the appellant's criminal rights should have been terminated. Besides the issue of the meritorious defense, the 1301 motion should have been granted because Mr. Delgado did show due diligence, as I mentioned earlier. He'd been involved in this case for three and a half years. He's traveled back from Cook County down to Effingham. I mean, he's strong. And the issue is he gets essentially defaulted for not showing up to two discovery depositions and then not showing up to two court hearings where the interveners, who are the foster parents, seek to then have him defaulted. Now, it should be noted that in the record that April and May of 2009, the appellant was wanted on a Class X felony warrant out of Champaign County. And so at the time the court defaults him, and at the time he fails to show up to the actual discovery depositions and to the actual court appearances, he's actually wanted out of Champaign County. So that fact tends to show that the appellant was not willfully out there trying to snub his nose at Effingham County in this termination case. Also, Your Honor. You're arguing that's a reasonable excuse. He's to be commended then. Well, that was an issue that the court brought up, and the court did say that that was not an excuse enough. But what we have here is a father who's participated in the litigation for three and a half years, and he gets a warrant out on him, and over a two-month period he misses two discovery depositions and he misses two sanction hearings. And then, oh, we'll just default him and terminate his parental rights. So that on some level should excuse the appellant's behavior for not appearing. Also, Your Honor, when looking under 1301... Does it excuse it or explain it? It explains it. Okay. Also, Your Honor, under a 1301 analysis, the other issues that the court should look at is the resident of the non-movement movements. In this case, Mr. Delgado is from Cook County, but all the other parties are from Effingham County. It's not that big of an issue in terms of making them travel anymore. The attorneys for the state, the attorneys for the intervenors are all based out of Effingham County. So that is also another factor that works in favor of Mr. Delgado. Also, Your Honor, the fourth factor that the court should have looked at if it had used the 1301 standard is the severity of the penalty. And during the course of this argument, I think on several occasions I brought up the fact of just how severe this penalty is. You're extinguishing a parent's rights outside of taking him and throwing him in custody. I don't know if there's any greater severe penalty that could be imposed on a litigant. Again, this is not some simple small plaintiff's case. This is a case terminating parental rights. It's litigation involving where a child should go live. Further, Your Honor, even if this court thinks that 1401 was correctly applied or should have been applied by the court, Mr. Delgado's motion still should have been accepted under 5-2-1401. The three standards that the court should look at when analyzing anything under 1401 is whether the appellant had a meritorious defense or claim, two, did he use due diligence in pursuing defense or claim, and also did he use due diligence in presenting his 1401 petition to the court. On the issue of meritorious defense, I will go back to the issue of the state has such a high burden in this case, that in and of itself. Let me ask you in connection with the meritorious defense and in connection with what Judge Stewart asked earlier. On May 29th, the court granted sanctions and entered a default judgment. Was there no evidence taken on that date? There was a brief evidentiary hearing, Your Honor. I believe the caseworker was called. Well, is it clear from the record that he ruled based entirely on a discovery sanction or some evidence that was presented or can you tell? Evidence was presented. I think the judge also looked at the evidence from the caseworker and I believe also the interveners who are the foster parents seeking to adopt also gave a testimony regarding the minor child. There's some pretty damning evidence in here that I'm reading, and so that may have been considered as well. Yes, Your Honor. I'm assuming that the judge probably viewed all the circumstances in making the ruling. However, the appellant's position still is that if 1401 scrutiny had applied, the court still should have granted the appellant's 1401 motion, getting back to the issue of meritorious defense. Thank you, Your Honor. Thank you, Mr. Koeppler. We'll have the opportunity to rebut Ms. Peterson. Thank you, Your Honor. Thank you for your support, Mr. Koeppler. I don't really have a lot to add to what was written in the brief, so I'll be fairly brief here unless you have questions. First of all, as to whether 2-1401 standard or 2-1301 should have been applied, there's two arguments presented by the respondent as to why 2-1301 should have applied. First, that the default judgment and order terminating parental rights was only an interim order and not a final judgment. We know from the brief the Illinois Supreme Court in Ray A. H. has determined that it is a final order because it fixes the rights of the parties. Also, under the Juvenile Court Act, in order to terminate parental rights, it doesn't require that a petition for adoption already be filed. In fact, in a lot of cases, there is no petition for adoption filed when parental rights are terminated. The Adoption Act itself specifically excludes parents whose rights have previously been terminated from adoption proceedings, and also the Adoption Act or the Juvenile Court Act deprives parents under 2-292 of their parental rights. The second argument advanced is that the respondent's pro se request on June 23rd should relate back to then bring this within the 30 days, so it would have been within the 30 days of the judgment order. But in the hearing, if it isn't made clear from the motion itself that was filed to review the order, counsel acknowledged that he was asking the court to reopen the case under 2-1401. So, respondent counsel specifically acknowledged that it did not relate back to the pro se motion for appointment of appellate counsel and that it was too late for consideration under 2-1301. Now, considering under 2-1401, it's important to keep in mind that the purpose of that section is to allow a respondent or defendant or whoever happens to be bringing the motion before the court matters of fact that did not appear in the record. And there isn't anything in this motion, in the argument made to the trial court, or in the argument made here before this court, of any factual matter that wasn't brought before the trial court. Also, I think the record in this case shows that the trial court did act reasonably and did not abuse its discretion in ruling on this. The court at the time was aware of the August 10th hearing, that is, was aware of the case that had been pending since December of 2005. This child had been in care since he was 5 months old. The court was aware from the May 14th hearing that the respondent failed to appear, failed to appear for court appearances. It wasn't just the failure to appear for the depositions. He didn't appear for visitations. He didn't appear for anything else. And during the termination proceeding, the trial court took judicial notice of all the client service plan, Catholic Charities reports, and the permanency hearing report filed with the court. And these reports show that the respondent rarely, if ever, called this child by his name, had stated during a meeting that he would choose a significant other over a child because you can always have another child. He just didn't comply with any of the orders that were made for him to cooperate with DCFS. Finally, I think that the respondent's motion for relief from judgment alleged as a meritorious defense that the state failed to meet its burden in the termination proceedings, but didn't specify in what way the foregoing was lacking. And the respondent cited nothing that was not known by the court, as I mentioned before. So we would argue there that the circuit court properly denied the motion under 2-1401. Now, even if it was considered under 2-1301, we still think it would have properly been denied. The primary concern in ruling under that section is whether substantial justice is being done. Now, as discussed in Part 2 of our brief, the case failed to show, the respondent in this case failed to show that he had a meritorious defense to the petition to terminate, and he failed to show that he exercised diligence with regard to that petition to terminate parental rights. In fact, the respondent in this case was provided ample notice of opportunities of all the proceedings, and he was given extraordinary opportunities in this case to come and defend against the petition to terminate parental rights, but he simply chose not to participate. I think even more than that, I think it shows that he had less concern about preserving his parental rights than he did about being able to manipulate the court. The record is replete with examples of him lying to DCFS about his contact with this child's mother, whose rights were terminated in June, I think, of 2007. It was her conduct that was the basis for the child being removed in the first place. This respondent kept maintaining contact with her, kept lying to DCFS about that, and, in fact, his felony cases were based on home invasion and aggravated battery of that same woman. So I think the record shows that, yes, this is a severe sanction. Yes, it is a severe, I don't want to call it penalty. It is the result of the proceedings, but it is a just result under these circumstances. Are there any questions? I don't think so. Thank you for your argument. And Mr. Kibble? Counsel brought up the Supreme Court decision, NRA AH, from 2003. Counsel contends that shows that in recent Supreme Court cases that an order terminating a father's parental rights under the Parentage Act, that is a final order. However, that was an 0-2 decision. The appellant's argument, in part, is that the Supreme Court's decision in 08 from Warner kind of sets things upside down a little bit. After the decision in Warner, it is conceivable that there's really no such thing as a bright-line, final, irrevocable order. Just because you have a default in the termination of parental rights. And I think that also brings up the whole issue of whether this is ripe or not, which Justice Stewart pointed out. However, if the case is found not to be ripe, I'm assuming the appellant can then go back to court for his motion for relief from the May 29th judgment, and the court would apply a 1301 standard to the appellant's motion. Also, Your Honor, again, the appellant would argue that based on this type of case, the severity of the case, the circuit court erred when it refused to analyze and grant the post-judgment motion under 1301. Again, this is an adoption case. You're extinguishing a father's parental rights. So when that happens, the circuit court needs to be very cautious about the process in which they go about doing this. You have an appellant father who's been involved in this litigation for three and a half years. As counsel pointed out, there were some things that don't show that maybe the appellant's the greatest person in the world. However, he still has rights. Just because he says things he shouldn't say to DCFS, just because he's shown a preference for a girlfriend over a child, does not mean that his rights can just be evaporated like that. There needs to be careful consideration whenever you're going to take this extraordinary remedy. Therefore, Your Honor, the appellant respectfully contends that the circuit court of Effingham County erred when it refused to grant the appellant's relief from judgment. Thank you for your time, Your Honor. Thank you, Mr. Kibler and Ms. Peterson, for your briefs and arguments. Take it under advisement and render a ruling in due course. This court stands in recess.